UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————
№ 06-CV-5673 (JFB) (ARL)
———————————

CAROLYN DZANOUCAKIS,

Plaintiff,

VERSUS

THE CHASE MANHATTAN BANK, USA,

Defendant.

———————————

**MEMORANDUM AND ORDER**
March 31, 2009

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Carolyn Dzanoucakis (hereinafter "plaintiff" or "Dzanoucakis") brought the instant lawsuit in New York State court against defendant Chase Manhattan Bank, USA (hereinafter "defendant" or "Chase Bank"), alleging a claim pursuant to the Truth in Lending Act, 5 U.S.C. §§ 166 *et seq.* ("TILA"), and claims for breach of contract and violation of due process, all relating to a credit card account that plaintiff had with the defendant. In particular, plaintiff alleged, among other things, that defendant improperly obtained an arbitration award against her in the amount of $25,995.29 with respect to an alleged credit card debt owed by plaintiff to defendant, even though allegedly no agreement existed between the parties to arbitrate. Thus, plaintiff contended that the defendant had no right to obtain an arbitration award against plaintiff and the arbitrator exceeded his authority. Based upon these alleged violations, plaintiff sought, among other things, immediate injunctive relief in the form of vacating the arbitration award.

Following removal of the lawsuit by defendant to this Court, defendant moved for leave to amend Chase Bank's answer to assert a counterclaim against plaintiff, pursuant to Federal Rule of Civil Procedure 15, for confirmation of the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 9 ("FAA"), which the Court granted. Defendant then filed the instant motion for judgment as a matter of law, requesting entry of judgment confirming the arbitration award. Plaintiff also has requested that her claims against the defendant be dismissed. For the reasons discussed below, the motion to confirm the arbitration award is granted.

I. BACKGROUND

A. Facts

The facts are taken from the record submitted by the parties and are undisputed unless otherwise noted.

Plaintiff entered into a Cardmember Agreement for a revolving line of credit with Chase Bank in or about February 1991. (Herrera Decl. ¶ 3 and Ex. A.) According to the copy of the agreement submitted by defendant, the agreement included the following language:

> Amendments to This Agreement: We can amend any of the terms of this agreement at any time, and we can set the effective date for any such amendment. We will notify you by mail of any such amendment as required by law. The amended terms of this Agreement can apply to all outstanding unpaid indebtedness and any future transactions on your Account. Any change which would increase the rate of Finance Charge, other fees, or impose a fee not set forth in this Agreement will be effective only if you agree to it. We can obtain your consent to any such amendment in one of two ways, as selected by us and disclosed to you with the notice of change of terms. Under one method, you consent to the amendment if: 1) after we give notice of the change, you elect to use your Account after the effective date of the amendment; or 2) you agree in writing to the change. Under the other method, you consent to the amendment if: 1) within 30 days after we mail you notice of the change, you do not give us written notice rejecting the change at the address we provide; or 2) you use your Account after 30 days from the date we mail you notice of the change, regardless of whether you give us notice rejecting the change.

(*Id.* at ¶ 4 and Ex. A.) Plaintiff alleges that the initial agreement between the parties "did not have any clause or provision that allowed Defendant to alter, amend or change the agreement and/or add new terms to the agreement in any way whatsoever." (Plaintiff's Decl. ¶ 4.)

Chase Bank has a permanent message system on its computer system that keeps track of what documents are sent to Chase Bank customers. This system reflects that a form notice number 25808 was mailed to plaintiff in March of 2002. (Herrera Decl. ¶ 5 and Ex. C.) Form notice 25808 is an "Arbitration Agreement and Change in Term Notice," which gave notice of an amendment to the Cardmember Agreement, adding a section entitled "Arbitration Agreement," which states:

> Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which is used [sic]) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card account or the advertising, application or approval of your Account, will, at the election of

2

either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning. Notwithstanding the foregoing, a Claim may be resolved by litigation and is not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000, excluding interest, costs and fees; and (3) the only parties to the litigation will be you and me. If one party wants a Claim to be resolved by arbitration, but the other party believes the Claim may be litigated subject to this small claims exception, the party seeking arbitration may require reasonable assurance from the other party that the conditions are true and that the party wishing to resolve the Claim by litigation will take no action now or in the future to change the nature of the Claim so that it would no longer meet the conditions of this small claims exception. If such reasonable assurance is not provided, the party seeking such assurance may require the Claim to be resolved by Arbitration.

(*Id.* at ¶ 6 and Ex. C.) The Arbitration Agreement also explicitly stated that the term "'Claims' includes claims that arose in the past, or arise in the present or the future." (*Id.* at Ex. C.) Plaintiff was given the opportunity to opt out of the Arbitration Agreement by notifying Chase Bank in writing and rejecting the change in terms by April 25, 2002. (*Id.* at ¶ 8 and Ex. C.) Chase Bank's permanent messaging system indicates that plaintiff did not opt out and the mailing was not returned as undeliverable. (*Id.* at ¶ 9 and Ex. B.) Plaintiff alleges that she "regularly check[s her] mail but [has] never received any amendments or changes of terms to any of the original agreements that allowed for any dispute to be resolved using arbitration." (Plaintiff's Decl. ¶ 6.)

The permanent messaging system also indicates that form notice number 0319 was sent to plaintiff in March of 2003. (Herrera Decl. ¶ 10 and Ex. B.) Form notice 0319 was a Change in Terms Notice that amended the Arbitration Agreement to clarify the costs that will be paid in connection with arbitration. (*Id.* at ¶ 10 and Ex. D.) Plaintiff was again given an opportunity to opt out of this new provision, but the messaging system does not indicate that plaintiff did so and the mailing was not returned as undeliverable. (*Id*. at ¶¶ 11-12 and Ex. B.) Moreover, plaintiff continued to use the credit card for purchases, cash advances, and/or balance transfers, after the March 2002 Arbitration Agreement and

3

March 2003 Change in Terms went into effect. (*Id.* at ¶ 13 and Ex. E.)

According to defendant, an additional Change in Terms notice was mailed to plaintiff in October 2005. (*Id.* at ¶ 15 and Ex. B.) This notice amended the Arbitration Agreement to except only those claims within the jurisdiction of the small claims court. (*Id.* at ¶ 15 and Ex. F.) Plaintiff once again failed to opt out of this change and the mailing was not returned as undeliverable. (*Id*. at ¶ 15 and Ex. B.)

Plaintiff ceased making payments to satisfy the balance due on her Chase Bank account in or about April of 2005. (*Id.* at ¶ 14 and Ex. E.) On May 3, 2006, Chase Bank filed a claim against plaintiff with the National Arbitration Forum ("NAF") pursuant to the Cardmember Agreement and amendments. (*Id.* at ¶ 16.) That same day, plaintiff was sent a letter enclosing the Claim and Notice of Arbitration pursuant to the NAF's rules. (*Id.* at ¶ 17 and Ex. G.) Plaintiff responded by notifying the NAF that she objected to arbitration on the grounds that there was no agreement to arbitrate. (*Id.* at ¶ 18 and Ex. H.) On August 23, 2006, after having fully considered all of the evidence and arguments, the arbitrator issued a written award that awarded Chase Bank the sum of $25,995.29. (*Id.* at ¶ 19 and Ex. I.) The Award concluded the following: (1) Chase Bank filed a proper Claim with the NAF; (2) plaintiff was properly served with notice of that Claim; (3) the notice of hearing was duly delivered to the parties; (4) a hearing was conducted in accordance with the NAF's rules; (5) the parties had an opportunity to present all evidence and information; (6) the parties had entered into a valid and enforceable written agreement to arbitrate their dispute; (7) the dispute was arbitrable under the parties' written Arbitration Agreement and under the law; and (8) the evidence submitted and substantive law supported issuance of an award. (*Id*. at ¶ 21 and Ex. I.) As of April 2008, plaintiff had failed to make any payments on the award and the entire balance remains due and owing. (*Id.* at ¶ 24.)

Plaintiff alleges that she never received the Arbitration Agreement and never agreed to its terms. (Plaintiff's Memorandum of Law, at 2.) Plaintiff further alleges that the Arbitrator ignored plaintiff's objection and "circumvented Plaintiff's right to due process by proceeding to conduct the arbitration procedures," and "further exceeded its authority by entering the arbitration award against Plaintiff on issues not submitted to arbitration." (*Id.*) Therefore, plaintiff argues, the arbitration award is void and should be vacated. (*Id.*)

B. Procedural History

On October 19, 2006, the defendant removed this action from Supreme Court, State of New York, County of Suffolk, based upon the plaintiff's assertion of a federal claim in count one of her complaint, which sought monetary damages for the defendant's alleged violations of TILA. On October 26, 2006, the defendant filed an answer. On June 29, 2007, pursuant to Rule 12 of the Federal Rules of Civil Procedure, defendant filed a motion to dismiss the second and third counts in the complaint – namely, the breach of contract and due process claims, respectively. On that same date, defendant also moved, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, to add a counterclaim for confirmation of the arbitration award.

By letter dated December 5, 2007, after the motions were fully submitted and oral argument was conducted, plaintiff indicated that she wished to voluntarily dismiss her complaint. By letter dated December 11, 2007, defendant opposed plaintiff's request to withdraw her claims. By Memorandum and Order dated March 25, 2008, this Court found that allowing plaintiff to withdraw her complaint prior to ruling on defendant's motion to amend would be unduly prejudicial to defendant. That Order went on to grant defendant's motion to amend its answer. On April 3, 2008, the amended answer was submitted with the counterclaim for confirmation of the arbitration award.

On May 1, 2008, defendant filed a motion for judgment confirming the arbitration award. On May 30, 2008, plaintiff submitted her opposition to defendant's motion. On June 12, 2008, defendant submitted its reply. The Court has considered all of the parties' submissions.

## II. STANDARD OF REVIEW

A motion to confirm an arbitral award should be "treated as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting

5

arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Though a *pro se* litigant's pleadings are afforded wide latitude, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, as noted above, to overcome a motion for summary judgment, the non-moving party "must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted); *see also Morris v. Ales Group USA, Inc.*, No. 04-CV-8239 (PAC), 2007 U.S. Dist. LEXIS 47674, at *10 (S.D.N.Y. June 28, 2007) ("[T]o survive summary judgment, plaintiff's facts 'must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

Confirmation of an arbitral award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (internal quotations and citation omitted); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) (holding that arbitration awards are entitled to great deference by the courts). If, however, "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

### III. DISCUSSION

Plaintiff contends that "the arbitration award presented by Defendant is void, because it was obtained by fraudulent means," and "because no arbitration agreement exists between the parties, the National Arbitration Forum did not have subject Matter Jurisdiction [sic] to arbitrate the dispute, the arbitrator had no authority to issue any award, and this very court lacks subject matter jurisdiction to enforce the award." (Notice of Plaintiff's Opposition, at 1.) As set forth below, the Court finds that plaintiff's conclusory assertions are unsupported by the record and there is no factual or legal basis for plaintiff to avoid confirmation of the arbitration award.

### A. Motion to Confirm Arbitration

The FAA represents a strong federal policy favoring arbitration agreements. "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, – U.S. – , 128 S.Ct. 1396, 1402 (Mar. 25, 2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The enforcement of arbitration

awards is guided by Section 9 of the FAA. Section 9 provides, in pertinent part:

> [A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. . . ."

9 U.S.C. § 9.

Confirmation of an arbitration award under Section 9 of the FAA is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdienier*, 462 F.3d 95, 110 (2d Cir. 2006) (citations omitted). It is well settled in the Second Circuit that a district court's review of an arbitration award under the FAA is extremely deferential. *See Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (stating that a district court's review of an arbitration award is very limited, "in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Accordingly, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110. Confirming an award requires "[o]nly a barely colorable justification for the outcome reached." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

A party seeking vacatur of an arbitration award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Section 10(a) of the FAA authorizes a district court to vacate an arbitration award:

> (i) where the award was procured by corruption, fraud, or undue means;
>
> (ii) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (iii) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (iv) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

7

9 U.S.C. § 10(a). These Section 10(a) statutory bases represent "egregious departures from the parties' agreed-upon arbitration." *Hall Street Assocs.,* 128 S.Ct. at 1404. Therefore, "the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987); *see also Nat'l Bulk Carriers, Inc. v. Princess Mgmt. Co.*, 597 F.2d 819, 825 (2d Cir. 1979) ("[O]nly clear evidence of impropriety justifies denial of summary confirmation.") (internal quotations omitted).[1]

---

[1] The Second Circuit has recognized an additional, but rarely used, ground not referred to in the statute: a "manifest disregard of the law." *See Porzig*, 497 F.3d at 139 (stating that courts will "vacate an award only upon finding a violation of one of the four statutory bases [enumerated in Section 10(a) of the FAA], or, more rarely, if we find a panel has acted in manifest disregard of the law"); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) ("'Manifest disregard of the law' by arbitrators is a judicially-created ground for vacating their arbitration award [that] was introduced by the Supreme Court in *Wilko v. Swan*. It is not to be found in the federal arbitration law.") (citations omitted).

However, in the recent case of *Hall Street*, the Supreme Court explicitly held that the aforementioned statutory grounds for vacatur under the FAA are exclusive. *See Hall Street Assocs.*, 128 S. Ct. at 1403 ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."). Since *Hall Street*, the Second Circuit has clarified that the "manifest disregard" ground is simply a judicial gloss on the enumerated grounds that remains viable after *Hall Street*, but that review continues to be "severely limited, highly deferential, and confined to those exceedingly rare instances of egregious impropriety on the part of the arbitrators." *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008) (quotations and citations omitted); *see also Vaughn v. Leeds, Morelli & Brown, P.C.*, No. 07-5637-cv, 2009 WL 690024, at *1 (unpublished order) (2d Cir. Mar. 16, 2009) (same). In any event, this ground for vacatur is not argued here and the Court sees no support for such an argument on the record.

---

Further, under Section 11 of the FAA, a district court may modify or correct an arbitration:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

9 U.S.C. § 11.

1. Arbitration Agreement

Plaintiff contends that the arbitrator exceeded his authority by ruling on the dispute when there was no arbitration agreement between the parties and, therefore, the award

should be vacated, pursuant to 9 U.S.C. § 10. Plaintiff further argues that the absence of an arbitration agreement deprives this Court of subject matter jurisdiction to confirm the underlying arbitration award.

"[A] challenge to the validity [of a contract] as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). But, if there is a challenge to "the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it. But [the FAA] does not permit the federal court to consider claims [which challenge] the contract generally." *Id.* at 445; *see also Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 554 F.3d 300, 311 (2d Cir. 2009). Plaintiff is clearly challenging the arbitration clause itself, inasmuch as plaintiff claims she never received any amendments to the original agreement she received from Chase and, therefore, never had notice of the arbitration agreement or an opportunity to opt out. (Plaintiff's Decl. ¶¶ 7-8; Plaintiff's Opposition, at 1 ("[p]laintiff denies that any arbitration agreement exists between the parties").) The Court, therefore, will consider the validity of the arbitration provision.

Defendant has put forth overwhelming evidence that 1) the original agreement between the parties included a clause allowing defendant to amend the agreement by giving plaintiff notice of the change and an opportunity to object to it, 2) defendant later sent plaintiff a notice in compliance with the agreement's terms adding an arbitration provision to the contract and giving plaintiff an opportunity to object, and 3) plaintiff never objected to the provision and continued to use her credit card after that time. (Herrera Decl. ¶¶ 3-15 and Exs. A-F.) This uncontroverted evidence is sufficient to establish the existence of an arbitration agreement unless plaintiff comes forward with evidence to effectively counter it.

In response, plaintiff has put forth only a declaration stating that the original agreement she had with Chase Bank "did not have any clause or provision that allowed Defendant to alter, amend or change the agreement and/or add new terms to the agreement in any way whatsoever," (Plaintiff's Decl. ¶ 4),[2] and that she "never received any amendments or changes of terms to any of the original agreements that allowed for any dispute to be resolved using arbitration." (Plaintiff's Decl. ¶ 6.) However, it is clear (and plaintiff does not dispute) that the notices sent to plaintiff were never returned as undeliverable. In fact, defendant has submitted a sworn declaration from an audit manager, along with computer business records related to plaintiff's account, which demonstrate, among other things, that mailings regarding amendments to the Cardholder Agreement pertaining to arbitration were made to plaintiff in March 2002, March 2003, and October 2005, and such mailings were never returned as undeliverable. (*See* Herrera Decl. ¶¶ 5-15 and Exs. B-F.) Thus, it is presumed that a properly mailed document is received by the addressee. *See Hagner v. United States*, 285

---

[2] This is flatly contradicted by the agreement submitted by defendant, which plainly includes a provision setting forth a procedure for defendant to amend the agreement. (Herrera Decl., Ex. A.) Plaintiff did not provide a copy of a different agreement to counter the version provided by defendant, nor did plaintiff deny that the agreement put forth by defendant is the agreement that she was originally sent.

9

U.S. 427, 430 (1932) ("[t]he rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed"). "[A] party must do more than merely assert that it did not receive the mailing; its testimony or affidavit of non-receipt is insufficient, standing alone, to rebut the presumption." *Ms. Interpret v. Rawe Druck-und-Veredlungs-GmbH (In re Ms. Interpret)*, 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998). In short, the uncontroverted record clearly supports a finding that the parties' agreement allowed for amendments, that a notice of amendment providing for arbitration was sent to plaintiff, and that plaintiff did not object to that notice. Plaintiff's own self-serving declaration to the contrary is insufficient, under the circumstances, to raise a triable issue of fact as to the making of the agreement for arbitration.

Numerous other courts have reached the same conclusion under similar circumstances where the cardholder's only evidence is an unsupported statement that he or she did not receive the document containing the arbitration agreement. *See, e.g., Stinger v. Chase Bank, USA, NA*, 265 Fed. Appx. 224, 2008 U.S. App. LEXIS 2751, at *7-*8 (5th Cir. Feb. 7, 2008) (unpublished order) ("First, [plaintiff] argues that no valid agreement to arbitrate existed between him and Chase because he never received the CMAs. Given that [plaintiff]'s only evidence was his own unsupported statement that he had not received either CMA, the district court did not commit clear error when it decided to credit [Chase Senior Director's] statement [in an affidavit] that Chase did send [plaintiff] the CMAs along with his credit cards."); *Cline v. Chase Manhattan Bank USA*, No. 2:07-CV-650 (DAK), 2008 WL 4200154, at *7 (D. Utah Sept. 12, 2008) ("The court concludes that Plaintiff's unsupported objections to Defendant's motion do not provide sufficient grounds to adequately contest confirmation of the arbitration award."); *Walters v. Chase Manhattan Bank*, No. 07-CV-0037 (FVS), 2008 WL 3200739, at *3 (E.D. Wash. Aug. 6, 2008) ("Defendant has submitted convincing evidence that a valid and enforceable arbitration agreement existed between Plaintiff and Defendant. Although Plaintiff's self-serving declaration claims otherwise, the facts demonstrate that Plaintiff received notice of the arbitration agreement by mail, the notice validly amended the cardholder agreement to include an arbitration clause, Plaintiff did not object to the arbitration clause after receipt of the notice, and Plaintiff continued to use the account after being notified of the arbitration agreement. Based on the foregoing facts, it is apparent that Plaintiff agreed to binding arbitration."); *Reeves v. Chase Bank USA, NA*, No. 4:07-CV-1101 (HEA), 2008 WL 2783231, at *4 (E.D. Mo. July 15, 2008) ("Plaintiff's only evidence is her own declaration that she had not received [the agreement] . . . . This vague and conclusory declaration fails to dispute the authenticity of the cardmember agreement provided by Defendant.").

This is particularly true where, as here, defendant has pointed out (and plaintiff has not denied) that plaintiff's papers in this lawsuit "are forms she purchased from an internet-based company called North American Education Services ('NAES')." (Defendant's Reply, at 2.) This allegation is supported by the fact that plaintiff's submissions appear to be nearly identical to submissions by plaintiffs in similar cases in other courts. For example, plaintiff's opposition includes the argument that "[o]ne cannot help but question the impartiality of a forum that stands to gain considerable future

business and income from Defendant (who has the potential to file thousands of claims annually) and the likelihood of no future business from Plaintiff (who filed an objection to the arbitration process)." (Plaintiff's Opposition, at 6.) With the exception of the last parenthetical, this is the same exact language as that used by a plaintiff in a nearly identical case, *Cline*, in the District of Utah. *See Cline*, 2008 WL 4200154, at *7. And the court in *Cline* found that language "nearly identical to the language from a strikingly similar case from the Northern District of California." *Id.* (citing *Carmack v. Chase Manhattan Bank*, 521 F. Supp. 2d 1017, 1026 (N.D. Cal. 2007)). Having received numerous submissions from plaintiff (and conducted several conferences with the parties), it is abundantly clear to this Court that plaintiff has submitted boilerplate, conclusory claims and defenses in this litigation, without regard to whether such defenses are properly and truthfully asserted under the actual facts of her case. An illustration of such an instance is contained *supra*, at footnote 2. As discussed *supra*, these unsubstantiated, conclusory assertions by plaintiff are insufficient to raise an issue of fact that necessitates a trial as to the making of the agreement for arbitration.

In sum, this Court finds that an arbitration agreement existed between the parties, that the arbitrator did not exceed his authority in ruling on the underlying dispute and this Court has subject matter jurisdiction to confirm such award.

2. Bias of the Arbitrator

Plaintiff next contends that the award should not be confirmed because the arbitrator was biased in favor of defendant. The only support plaintiff offers for this contention is the fact that the arbitration forum "stands to gain considerable future business and income from Defendant (who has the potential to file thousands of claims annually)." (Plaintiff's Opposition, at 6.) This is an insufficient basis upon which to vacate an arbitration award. To vacate an award on the basis of partiality, a party must show that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Lucent Techs., Inc. v. Tatung Co.*, 379 F.3d 24, 31 (2d Cir. 2004); *see also, Transportes Coal Sea de Venez. C.A. v. SMT Shipmanagement & Transp. Ltd.*, No. 05-CV-9029 (KMK), 2007 U.S. Dist. LEXIS 1802, at *8-*9 (S.D.N.Y. Jan. 9, 2007) ("The mere appearance of bias does not satisfy the standard of evident partiality. Rather, to set aside an arbitration award for arbitrator partiality, the interest or bias [of the arbitrator] . . . must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative.") (internal quotations and citations omitted). Plaintiff's conclusory assertion is insufficiently supported by any indication of bias to justify vacating the arbitration award. *See Cline*, 2008 WL 4200154, at *8 ("Plaintiff's bald assertions that the National Arbitration Forum must be biased in favor of Defendant because they rely upon Defendant for business falls into this latter category of 'remote, uncertain, or speculative' evidence.") (quoting *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982)); *Millan v. Chase Bank USA, N.A.*, 533 F. Supp. 2d 1061, 1068 (C.D. Cal. 2008) (finding plaintiff's "general observations about the 'symbiotic relationship' between NAF and Chase . . . insufficient to establish a basis to vacate the award.").

Plaintiff has offered no other explanation for her conclusory assertion that the arbitration award should be vacated because it was "obtained by fraudulent means." Nor has plaintiff offered any other grounds upon which the arbitration award could be vacated or

11

modified, and none appear on the face of the record. For example, plaintiff's various other arguments, including that the enforcement of arbitration agreements in this context is unconscionable and contrary to public policy, are entirely without merit. Therefore, the Court must confirm the arbitration award. 9 U.S.C. § 9 (upon an application for an order to confirm an arbitration award, "the court must do so unless the award is vacated, modified, or corrected under § 10 or § 11"); *D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court must grant the award unless the award is vacated, modified, or corrected.") (internal quotation marks omitted). Accordingly, the Arbitration Award is confirmed and reduced to a judgment. *See* 9 U.S.C. § 9.

IV. CONCLUSION

For the reasons set forth above, defendant's motion to confirm the arbitration award in the amount of $25,995.29, pursuant to 9 U.S.C. § 9, is hereby granted. Judgment will be entered on this award pursuant to Federal Rule of Civil Procedure 54(b).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 31, 2009
      Central Islip, NY

\* \* \*

Plaintiff is representing herself *pro se*: Carolyn Dzanoucakis, 118 West Tiana Road, Hampton Bays, New York 11946. The attorneys for defendant are Debra Wabnik, Esq. and Thomas Stagg, Esq. of Simmons, Jannace & Stagg, LLP, 75 Jackson Avenue, Syosset, New York 11791.